UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL W. MAYERHOFER,

          Petitioner,

    V.

FLOYD BENNETT,

          Respondent.

**REPORT AND RECOMMENDATION**

02-CV-74

# I. INTRODUCTION

Petitioner Michael Mayerhofer, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1999, he was convicted in a New York State court of Second Degree Burglary and Fourth Degree Grand Larceny and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 36).

# II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the transcript of Petitioner's trial. On or about September 5, 1998, a trailer located in the Town of Athens, New York was

burglarized. Jewelry, cash and other personal items were stolen. (T at 162-64).[1] Vanessa Gonzalez ("Gonzalez"), the owner of the trailer, called the police and then confronted Petitioner because she believed he had burglarized her trailer. (T at 164-65). Trooper Jeffrey Holliday ("Trooper Holliday") arrived a short time later to investigate. (T at 290).

During his investigation, Petitioner accompanied Trooper Holliday to Gonzalez's trailer. (T at 291). While in the trailer with Trooper Holliday and Gonzalez, Petitioner made incriminating statements with respect to his involvement in the burglary. (T at 296). Trooper Holliday then requested the assistance of Investigator Kenneth MacCalla ("Investigator MacCalla") at the scene. (T at 344).

Thereafter, Investigator MacCalla arrived at the scene to investigate. (T at 344). Investigator MacCalla asked Petitioner to accompany him to the police barracks for an interview regarding the burglary and Petitioner agreed. (T at 346). According to the testimony of Investigator MacCalla, Petitioner admitted during questioning that he had stolen assorted jewelry and other personal items from his neighbor. (T at 353). The items were recovered in Petitioner's girlfriend's apartment. (T at 301-02). Petitioner signed a form confirming that he was given his Miranda[2] rights and agreed to reduce his confession to writing. (T at 354- 60).

On September 30, 1998, a Greene County Grand Jury returned Indictment Number 98-117, which charged Petitioner with Burglary in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") § 140.25 (2);[3] Grand Larceny in the Fourth Degree, in violation

---

[1] References preceded by "T" are to the transcript pages of Petitioner's trial.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

of N.Y.P.L. § 155.30(1); and Unlawful Posession of Marijuana, contrary to the provisions of N.Y.P.L. § 221.05.

**B.    State Trial Court Proceedings**

The Honorable Daniel K. Lalor, Greene County Court Judge, presided over Petitioner's trial proceedings. On March 2, 1999, a <u>Huntley</u> hearing[4] was held to determine the voluntariness of Petitioner's statements to the police. Following the hearing, Judge Lalor determined the statements were voluntarily made and the statements were admitted as evidence at trial.

The trial began on May 5, 1999. Petitioner was represented by James E. Banagan, Esq. On May 7, 1999, the jury found Petitioner guilty of Burglary in the Second Degree and Grand Larceny in the Fourth Degree. (T at 515). The charge of Unlawful Posession of Marijuana was not presented to the jury.

On June 8, 1999, Judge Lalor sentenced Petitioner as a second violent felony offender to a determinate term of twelve years for his conviction of Burglary in the Second Degree and as a second offender to two to four years for his conviction of Grand Larceny in the Fourth Degree to run concurrent to each other. (S at 12)[5]. Therefore, Petitioner's total aggregate sentence was twelve years. (S at 13).

---

[4] A hearing pursuant to <u>People v. Huntley</u>, 255 N.Y.S.2d 838 (1965), is held to determine the voluntariness of a criminal defendant's statements to the police.

[5] References preceded by "S" are to pages of the transcript of the sentencing proceeding held before Judge Lalor on June 8, 1999.

### C.   State Appellate Proceedings

Petitioner appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner raised the following four arguments in support of his appeal: (1) that his statements to police were improperly admitted into evidence, (2) that the trial court erred in denying his motion for a mistrial upon learning that the prosecution failed to disclose evidence favorable to him, (3) that there was insufficient evidence to support the grand larceny conviction, and (4) that the sentence imposed was harsh and excessive.

In a decision issued on May 3, 2001, the Appellate Division affirmed Petitioner's conviction and sentence.  People v. Mayerhofer, 725 N.Y.S.2d 696 (3rd Dep't 2001). Petitioner's application for leave to appeal to the Court of Appeals was denied.[6]

### D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on January 18, 2002, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  In his original petition, Petitioner asserted three grounds for habeas relief: (1) that his conviction was unconstitutional because the prosecution failed to disclose favorable evidence to him; (2) that his conviction for grand larceny was unconstitutional because the prosecution failed to establish the value of the alleged stolen property was worth more than $1,000; and (3) that his sentence was harsh and excessive.

---

[6]There is no citation available to the Court of Appeals denial of Petitioner's application for leave to appeal.  However, neither party disputes that Petitioner did apply for leave to appeal to the Court of Appeals and that he was denied.  In addition, Respondent does not challenge the timeliness of this Petition and it appears from the record that his petition is timely.  See (Docket No. 28 and Docket No. 32 at p.2)

4

Petitioner thereafter moved to stay his habeas corpus proceedings so that he could exhaust his state court remedies. (Docket No. 14). On August 26, 2002, Respondent filed a reply memorandum in response to the original Petition. (Docket No. 16). On September 17, 2002, the Honorable Gary L. Sharpe granted Petitioner's motion to stay his habeas corpus proceedings until he exhausted his state court remedies. (Docket No. 17).

Thereafter, Petitioner filed a New York Criminal Procedure Law ("CPL") § 440 motion to vacate his sentence, claiming that he had be denied effective assistance of counsel during sentencing. The trial court denied his motion and the Third Department affirmed. See (Docket No. 28).

On September 11, 2003, Petitioner filed an Amended Petition, which asserted the three grounds raised in the original Petition, and added a fourth ground alleging ineffective assistance of counsel during the sentencing phase of his trial court proceedings. (Docket No. 28). Respondent then filed further submissions in opposition. (Docket No. 32).

For the reasons that follow, the Court recommends that the Amended Petition be DENIED.

### III. DISCUSSION

#### A.  Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C.

§ 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court

6

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

Petitioner now asserts the following four claims in support of this Petition: (1) that his conviction was unconstitutional because the prosecution failed to disclose favorable evidence to him; (2) that his conviction for grand larceny was unconstitutional because the prosecution failed to establish that the value of the alleged stolen property was worth more than $1,000; (3) that his sentence for his convictions is harsh and excessive; and (4) that he was denied effective assistance of trial counsel at the sentencing phase.

### 1. Rosario Material

Petitioner's first ground for habeas relief is that his conviction was unconstitutional because the prosecution failed to disclose "favorable evidence" to him. See (Docket No. 28, "Ground One"). At trial, the prosecution offered testimony from Isabelle Augello, the victim's mother, regarding an admission that Petitioner made at the scene of the crime. Petitioner claims that the prosecution "impermissibly failed to notify the defense [of the testimony] prior to trial." (Id.).

In his appeal to the Appellate Division, Petitioner asserted that the failure to notify the defense of Ms. Augello's testimony constituted a violation of the prosecution's obligation under People v. Rosario, 9 N.Y.2d 286 (1961). The Appellate Division rejected Petitioner's argument, finding that the Rosario rule was not implicated because the prosecution did not have a "written or recorded statement" of the victim's mother. In addition, the appellate court held that Petitioner "clearly had notice of how Augello would testify since Gonzalez had previously testified that defendant admitted committing the crime to both she and Augello." Mayerhofer, 283 A.D.2d at 674.

Critically, Petitioner did not assert, in his appeal to the Appellate Division, that the prosecution violated its obligation under the Supreme Court's decision in Brady v. Maryland to disclose impeaching or exculpatory evidence. In his Petition for habeas relief, Petitioner also does not cite Brady in support of his claim.

This Court finds that Petitioner's Rosario claim does not present an error of constitutional magnitude and therefore is not cognizable on habeas review. As this Court has previously noted, "[u]nlike a Brady claim, a Rosario claim is solely a New York state law right." Hill v. Senkowski, 409 F. Supp. 2d 222, 232 (W.D.N.Y. 2006) (citing Lyon v.

Senkowski, 109 F. Supp. 2d 125, 129 (W.D.N.Y. 2000); Copes v. Schriver, No. 97 CIV. 2284, 1997 WL 659096, at *4 (S.D.N.Y. Oct.22, 1997). The prosecution's disclosure requirements pursuant to Rosario are more expansive than those later defined by the Supreme Court in Brady and its progeny. See Lyon, 109 F.Supp.2d at 139.

Accordingly, "to the extent that Rosario exceeds federal constitutional requirements, it defines state law, and the prosecutor's failure to turn over Rosario material is not cognizable on federal habeas review." Hill, 409 F. Supp. at 232 (citing Lyon, 109 F.Supp.2d at 139; Green v. Artuz, 990 F.Supp. 267, 274 (S.D.N.Y.1998).

Moreover, any attempt by Petitioner to frame his claim as arising under Brady would necessarily be unavailing because Petitioner failed to fairly present such a claim in state court. In any event, even if this Court were to consider Petitioner's claim under Brady, the claim would be denied due to the lack of prejudice arising from the prosecution's alleged failure to provide prior notice of the witness's testimony.[7] In other words, Petitioner is not even arguably entitled to relief under Brady because he failed to established that "there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." Campbell v. Greene, 440 F. Supp. 2d 125, 154 (N.D.N.Y.2006).

Accordingly, this Court finds that Petitioner's Rosario claim should be DENIED.

### 2. Sufficiency of the Evidence

In his second claim for relief, Petitioner argues that the prosecution failed to prove

---

[7] The Supreme Court has held that "[t]here are three components of a true Brady violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)

9

that the value of the stolen property exceeded $1,000. The Appellate Division rejected this argument, concluding that based upon the evidence presented at trial, "the jury could 'reasonably infer, rather than merely speculate' that the value of the stolen [goods] exceeded the statutory threshold." Mayerhofer, 283 A.D.2d at 674.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.],"

Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume– even if it does not affirmatively appear in the record– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

In the present case, the victim, Vanessa Gonzalez, testified as to the purchase price and condition of several of the stolen items. (T. at 181-183, 221). The victim's mother, Isabelle Augello, also testified regarding the value and condition of several of the items, which she had purchased as gifts for Ms. Gonzalez. (T. at 261). Many of the items were admitted in evidence and were accordingly available for the jury to review. The Appellate Division held that the testimony regarding the purchase price, age, and condition of the stolen items, combined with the jury's ability to examine several of the items, was sufficient under New York law to establish the requisite value. Mayerhofer, 283 A.D.2d at 674.

After reviewing the foregoing evidence, the Court finds that the Appellate Division's conclusion in this regard was not contrary to, or unreasonable application of, United States Supreme Court due process precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the value of the stolen items exceeded $1,000. As such, Petitioner's claim for relief based upon alleged insufficiency of the evidence should be DENIED.

    **3.**    **Harsh and Excessive Sentence**

In Petitioner's third ground for habeas relief, he claims that his sentence was

excessive and not in the interest of justice. Specifically, he argues that because the trial court judge was "inclined all through pretrial plea negotiations to sentence [him] to a minimum determinate sentence," he should not have been sentenced to 12 years after trial. See (Docket No. 28 "Ground Three"). Respondent argues that this ground for habeas relief is not cognizable on federal habeas review.

A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992). A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

Petitioner was sentenced as a second violent felony offender to a determinate term of twelve years for his conviction of Burglary in the Second Degree (Class C violent felony offense) and as a second offender to two to four years for his conviction of Grand Larceny in the Fourth Degree (Class E felony offense) to run concurrent to each other. (S at 12). The sentencing range for a class C violent felony is 3 ½ to 15 years imprisonment. N.Y. Penal Law § 70.02(3)(b). The maximum term of imprisonment for a class E felony is four years. Id. at § 70.00(2)(d). Therefore, Petitioner's sentences were within the statutory range. Further, the Appellate Division concluded that "[c]onsidering, *inter alia*, defendant's

extensive prior criminal record, we perceive no valid basis for disturbing County Court's sentencing determination which was within the statutory parameters." Mayerhofer, 725 N.Y.S.2d at 699.

To the extent Petitioner is alleging that his sentence was the result of vindictiveness for his refusal of a pre-trial plea offer, he does not make out a claim of actual vindictiveness because the judge never stated or implied that the sentence was based on Petitioner's refusal of the plea offer. See Naranjo v. Filion, 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003) (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer). The mere fact that the trial court, following conviction, imposed a high sentence does not, in and of itself, establish "actual vindictiveness." See id. (citing, inter alia, Corbitt v. New Jersey, 439 U.S. 212, 219, 223, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.... We discern no element of retaliation or vindictiveness against [appellant] for going to trial. There is no suggestion that he was subjected to unwarranted charges. Nor does this record indicate that he was being punished for exercising a constitutional right.... There is no doubt that those homicide defendants who are willing to plead non vult may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed."); Chaffin v. Stynchcombe, 412 U.S. 17, 31, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); United States ex rel. Williams v. McMann, 436 F.2d 103, 106-07 (2d Cir.1970), cert. denied, 402 U.S. 914, 91

S.Ct. 1396, 28 L.Ed.2d 656 (1971); Bailey v. Artuz, 1995 WL 684057, at *2 (N.D.N.Y. Nov. 15, 1995) ("[A] sentencing judge does not show vindictiveness ... by sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a lower penalty, has then been convicted of a more serious offense to the higher penalty authorized ... [Petitioner] has offered no evidence of vindictive sentencing beyond the fact of the plea bargain offered to him and the actual sentence he received.... Therefore, [petitioner] has not made out a claim of constitutionally impermissible vindictive sentencing.")).

Petitioner's sentence fell within the permissible statutory range and therefore his third ground for habeas relief should be DENIED.

### 4. Ineffective Assistance of Counsel

In his fourth claim for habeas relief, Petitioner argues that he was denied the effective assistance of counsel. Specifically, he argues that his trial counsel's conduct at sentencing was unconstitutionally deficient. The Amended Petition does not contain any detail regarding this claim. However, in his § 440 motion in state court, Petitioner argued that trial counsel's performance was deficient because (1) trial counsel failed to object to the pre-sentence report, (2) counsel failed to offer mitigation evidence, (3) counsel failed to adequately explain Petitioner's prior criminal record, and (4) counsel did not properly advise the sentencing court regarding plea discussions and failed to correct certain alleged misstatements made by the prosecution with respect to the history of those discussions.

The sentencing court rejected Petitioner's arguments in a written decision dated April 11, 2003. The court noted that it was familiar with Petitioner's criminal history at sentencing and "no amount of advocacy would have been effective to change those facts of record."

14

The court further explained that its sentencing decision was "based not upon prior plea negotiations but upon the trial evidence and defendant's criminal history."

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688, 104 S.Ct. 2052. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id. Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

In the present case, even assuming trial counsel's performance at sentencing fell below an objective standard of reasonableness, Petitioner cannot establish prejudice and is therefore not entitled to relief. The sentencing court's decision with respect to the § 440 demonstrates the lack of any reasonable probability that, but for counsel's allegedly deficient performance, the sentence would have been different. In other words, Petitioner

has failed to show that he would have received a lower sentence if his trial counsel had performed in the manner desired by Petitioner. Absent such a showing, Petitioner's claim must fail. See Remy v. Graham, No. 06-CV-3637, 2007 WL 496442, at *7-*8 (E.D.N.Y. Feb. 12, 2007) ("The failure to investigate and present important mitigating evidence during sentencing can indeed amount to constitutional error. But where the defendant cannot show prejudice, the claim will fail."); see also Carter v. Perlman, 425 F. Supp. 2d 343, 350 (E.D.N.Y. 2006); Perez v. Greiner, No. 01-CIV-5522, 2002 WL 31132872, at *7-*8 (S.D.N.Y. Sept. 25, 2002). The Court is satisfied that Petitioner was not prejudiced by his trial counsel's conduct at sentencing.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Michael Mayerhofer's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

DATED:   April 6, 2007

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[8]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

---

[8]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Auburn Correctional Facility, therefore, the correct Respondent is Harold Graham, the Superintendent of the Auburn Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Harold Graham.
   The Clerk of the Court is directed to terminate Floyd Bennett as Respondent, add Harold Graham, Superintendent of the Auburn Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

17

consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 6, 2007

*(signature)*

Victor E. Bianchini
United States Magistrate Judge